STEELE et al. v. D. L. WARD CO. et al.

(District Court, E. D. Pennsylvania.  May 29, 1919.)

No. 1833.

1. TRADE-MARKS AND TRADE-NAMES ☞93(3)—UNFAIR COMPETITION.
    Evidence *held* not to sustain a claim of unfair competition by defend-
    ant in the manufacture and sale of desk stationery boxes; it not appear-
    ing that there was any intention to deceive purchasers, or that there was
    such resemblance as in fact resulted in deception.

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—STATIONERY BOX.
    The Ehmling patent, No. 1,014,581, for a stationery box, *held* valid,
    and infringed by defendant by one style of box made by it, which was dis-
    continued on notice by complainant but not infringed by a later style.

In Equity.  Suit by John D. Steele and Frederick A. Strong, Jr.,
against the D. L. Ward Company and Charles T. Ehmling.  Decree for
complainants.

Robert M. Barr, of Philadelphia, Pa., for plaintiffs.
Howson & Howson, of Philadelphia, Pa., for defendants.

DICKINSON District Judge.  It may contribute somewhat to a
clear view of the real questions involved in this case if a preliminary
outline statement of the situation of the parties, their respective
claims of right, and how far these claims have a legal basis is first
given.  We may then proceed to consider which of the claims to legal
rights are well founded.

A man by the name of Alexander Ehmling conceived the thought
of a letter stationery box which would make its appeal to purchasers
through having certain features of convenience of use.  Without enu-
merating all these features, one of them was to have the box so con-
structed as that it would in itself answer to the purposes of a writing
desk.  This was an important, if not the chief, feature, and gave to
the box the designation of a "desk box."  Another feature was the di-
vision of the box into compartments, so that the lid, when opened,
might hold the writing paper as a pad, and the body of it the envelopes,
separated by a partition, which made a tray for holding pens.  This
required, or at least suggested, such a construction as would permit of
the lid, with its pad of writing paper, folding down over the body con-
taining the tray and envelope space, with other features of what may
be termed the mechanical construction of the box.  It was found that
the average user required more letter sheets than envelopes, and the
box was supplied with them in the proportion of 24 to 21.

It would be readily recognized that all and any one of these features
have a value of convenience, but that the purchaser who buys boxes
of stationery for home use would be so well supplied with desk and
other facilities that having them supplied along with the box would
make no very great appeal to him.

The attempt to build up a business met at first with only a modest
success.  The first type of box was known as the Dutch Girl.  The

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

business was that of the "Twin Company." Alexander Ehmling was himself the chief, if not the only salesman. As such, he was efficient and quite successful. He had patented his box, and thus secured rights, which will later be discussed. Naturally he laid strong emphasis upon the fact that the box he was selling was his make of box, and protected by letters patent issued to him. He was also president of the company, and his name appeared as such. The box was not, however identified by the trade with his name, so as to be known in the trade as the "Ehmling box," but was known under other trade-names. Although the efforts to secure a trade met, as has been said, with a fair measure of success, and stationery put up as the Twin Company put it up in their boxes came, in a limited way, to be recognized to be in a class by itself, the business as a commercial venture was not a complete success.

This lack of success was probably, at least, in large measure, due to other things than any failure on the part of users of the box to appreciate its merits. There was need, however, to reorganize the business. This brought the present plaintiffs into it, and Ehmling, the patentee, dropped out. His brother, Charles T. Ehmling was also in the employ of the company, and learned of the box and the details of the business. The brother also severed his connection with what became the business of the plaintiffs.

Then came the establishment of military camps, first on the Mexican border, and afterwards officers' training camps and cantonments in a number of places, as well as an increase in the number of ships and naval stations. The sale of letter-writing facilities, such as these boxes afforded, was greatly stimulated, and the business expanded eightfold or more. Soon the salesmen of the plaintiffs, on their visits to camps and to naval and military officers, who were purchasers of navy and army supplies, found there were competitors in what the plaintiffs looked upon as their special field. Among these competitors was the defendant. It had been led, or induced to go, into the trade under the following circumstances:

The defendant, who had long been and was largely engaged in the same general line as a manufacturer, was approached by Charles T. Ehmling with the project of making for and supplying to him letter boxes for which he thought he could build up a trade. Ehmling had no capital and no credit. The project in consequence did not appeal to the defendant. The insistence of Ehmling resulted, however, in an arrangement being made by which he was to be provided with facilities for the manufacture of his make of boxes, which were to be put upon the market and sold. Ehmling's compensation was to be determined by the defendant after the success of the venture became known. The defendant had at the time no knowledge of the plaintiffs' box as patented or otherwise, or of their claims upon the trade in their special field. A box was put out under the trade-name of "Ehmling's Linen," and is the box known to this record as defendant's "first box." It possessed all the features of plaintiffs' box, and was substantially like it; the most noticeable variance being in the location of the pen tray. Notice of the trade competition thus introduced sent

the plaintiffs to the defendant, with a complaint of a trespass upon plaintiffs' rights, and a warning of the consequences of infringement. The parties, with their counsel, met in conference. No bill of complaint had at that time been filed, although one had been prepared, ready to be filed. The attitude of the defendant as declared by it (and its sincerity is found) was one of willingness to meet the demands of the plaintiffs.

The business of the defendant with Ehmling had not turned out to be profitable, so that, aside from other matters which entered into consideration, the defendant had no selfish motive in a continued trespass upon plaintiffs' rights. In consequence, the defendant, without any formal admission of plaintiffs' proprietary right to the tray form of box, agreed to discontinue the use of this form, and to take the tray feature out of its make of box. This was done, and the defendant thereafter put out what is known to this record as the defendant's "second box." This is substantially the same box, with the tray feature eliminated, making of it a box with the envelope compartment larger in one direction than that called for by the size of the envelopes. The practical result is, when the envelopes slide (as, of course, they do) to one side, there is what the plaintiffs call a "pen tray space" provided, or at least ready at hand for use. The efforts of the parties and their counsel to adjust all their differences, at first thought to have succeeded, were finally unsuccessful, and the bill now before us was filed.

There is in the mind of the plaintiffs the natural, although unavowed, because untenable, claim to an exclusive right, if not to the special sales field of army cantonments, at least to the sale of "desk boxes." We have characterized this claim as natural, because, as often before observed, the one who is the discoverer or the creator of a special field of demand resents as an intrusion the entry upon it of any one else. The claim of an exclusive right (as to any monopoly) cannot be given judicial sanction or support, unless it reaches the dignity of a legal right.

This brings us, after an overlong prelude, to the averments of the bill of complaint, the answer, and the proofs disclosed by the evidence. The complaint may be summarized as one of unfair competition, and of infringement of the patent rights to which the plaintiffs have succeeded. The answer is a denial of all acts of unfairness and of all unfair dealing in competing for a share in the trade—a denial of infringement and of the validity of the patents.

The right of the defendant to compete for trade in the special field which plaintiffs had marked out for their own is, of course, asserted. This special field may be delimited as the supply of the needs of those who were in need, not of stationery alone, but of a desk and writing facilities along with it. The expression "desk box," by which plaintiffs designated what they were offering for sale, emphasizes this feature of their real complaint.

The complaint of unfair competition may be first given attention. It has two bases in the facts as asserted by the plaintiffs. One is the like general make-up and consequent like general appearance of the two makes of boxes. The other fact is the plaintiffs' make of box was

that of Alexander Ehmling, who patented it. Alexander Ehmling was also the president of the company, which manufactured and sold his make of box. When the defendant manufactured boxes designed by Charles T. Ehmling and sold them as boxes of "Ehmling's Linen," or made other use of the Ehmling name, the result intended, but whether intended or not, was to impose upon the purchasing public the defendant's make of box for that of the plaintiffs.

With respect to the first fact, we are unable to find that it has the significance attributed to it by the plaintiffs. The fact of likeness in appearance is found, so far as general similarity is involved. The familiar distinction, however, between likeness which functional features common to two things lends to their appearance and likeness in features not functional, presents itself. The latter justifies giving to such likeness a deceiving significance. The former forbids it, or at least does not warrant it.

[1] Our finding is that there is nothing, either in the general likeness or in any of the appearance features (including the seal fastener) or in all combined, which leads to the conclusion that there was either the attempt to palm off one make for the other, or the result of having one mistaken for the other. The fact that defendant's make of box was given the name of "Ehmling's box" might, and would, under some circumstances, have a bad significance. Here, again, however, there is suggested the two points which were brought out in the opinion of Judge Magill in the Suburban Life publication case. Unfairness may be found in the selection of a name like that of a competitive product, if intended to deceive. It may also be found if the mistake of one for the other will result, although such result may not have been the motive for the choice of name. The use of the name "Ehmling" did not have a deceptive purpose. The defendant has nothing to gain from its use. The only value it had was to preserve to Ehmling any good will which he might build up, if he afterwards withdrew his business from the defendant. The use of the name did not result in any mistake of one make for that of the other. The plaintiffs' make of boxes was never known by that name, but by other trade-names which had been chosen for them.

The use of the name could not have been prompted by any thought that it would or could aid in the palming off of the defendant's boxes as those of the plaintiffs. Its use would not, therefore, justify a finding either of intended or resulting deception. The bill of complaint, so far as it avers unfair competition, is not sustained by the proofs.

[2] With respect to the patent rights claimed by plaintiffs, they show the award to them of such rights by letters patent No. 1,014,581. Prima facie this patent is valid. There is a general denial of validity, but this is in effect more a refusal to admit validity than a denial of it. There is, on the other hand, a very substantial acquiescence in the assertion of the rights claimed by plaintiffs, so far as embodied in the defendant's first make of box. As against the defendant we may find both validity and infringement to this extent. As defendant discontinued the manufacture of this make of box, and has disavowed any claim of a right to resume its manufacture, the finding made is of lit—

tle practical value. What we are now concerned with is the scope of the claims of the patent, and more particularly whether they include defendant's second make of box. The right to make this they assert and stand upon. If they cannot make it, then, as they view it, a box cannot be made of larger dimensions than the size of the envelope contents demands. As already indicated, the real right claimed by the plaintiffs is a trade right, rather than a patent right. Given the conception of a stationery box, with the desk box and tray features added, and any variations would seem to involve only details of mechanical construction and convenience in arrangement of compartments. If this be true, it follows that, when the plaintiffs are allowed a patent upon their make of box because of a combination of features, including the tray, they get all which the patent laws can give them, unless they have the right, also, to the desk box feature. The latter is the feature of real value. Unfortunately for them, we cannot allow such claim of right, for the reason that this feature has not been patented, and this because, in view of the state of the prior art, it is not patentable.

The doctrine of the law which stands in the way of the plaintiffs is not that of estoppel or of waiver, but the doctrine that the plaintiffs cannot have a monopoly of the right to make and vend, unless the patent laws give it, and the award of a patent makes the gift effective. No matter how broad the right given by the law, if the patentee secures the allowance of letters patent, at the cost of his right being limited and restricted to a particular construction as the embodiment of what he claims, and all he claims, he gets no more than the rights awarded him, notwithstanding the fact that he was entitled to more than was awarded him. If the limitations exacted of him as the price of any grant make the price excessive, he may refuse to pay the price and have his right to all he claims determined. He cannot accept what is awarded him and claim more. The grant of letters patent alone gives him whatever right he may claim. The patent granted is prima facie valid. He may not get all or any part of what is granted, but without the patent he gets nothing, no matter how great his deserts.

Without unduly expanding this opinion by going into a discussion of the scope of the patent claim, we content ourselves with a statement of the conclusions reached. These are that the claim in issue is valid and infringed by defendant's first box, that defendant's second box is not an infringement, and that there has been no infringement by defendant after notice in fact of plaintiffs' patent rights.

The plaintiffs are entitled to a decree embodying these findings, and to an injunction against the making, using, or vending of a desk box with the tray feature. The averments of the bill charging unfair competition are not sustained.